UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLTON HOOKER, JR.,

      Plaintiff,

v.                                           Case No: 8:18-cv-2000-T-36JSS

ROBERT WILKIE, Secretary
Department of Veterans Affairs,

      Defendant.
_____/

# O R D E R

This cause comes before the Court upon Defendant's Motion to Dismiss Second Amended Complaint (the "Motion"), Doc. 52, and Plaintiff's response in opposition, Doc. 53. The Court, having considered the parties' submissions and being fully advised in the premises, will grant the Motion.

## I.    BACKGROUND

### A.  Factual Background[1]

Carlton Hooker, Jr. ("Plaintiff"), proceeding *pro se* in this matter,[2] is a veteran with a service-connected disability and a former employee of the Bay Pines V.A. Health Care System.

---

[1] The following statement of facts is derived from the second amended complaint (the "Second Amended Complaint"), Doc. 48, the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss, *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

[2] The Tampa Chapter of the Federal Bar Association operates a Legal Information Program on Tuesdays from 1:00 p.m. to 3:00 p.m. on the 2nd floor of the Sam Gibbons United States Courthouse and Federal Building, 801 North Florida Avenue, Tampa, Florida 33602. Through that program, *pro se* litigants may consult with a lawyer on a limited basis for free. Reservations for specific appointments may be made by calling (813) 301-5400; walk-ins are welcome if space is available. More information about the program is available on the Court's website at

Doc. 48 at 6. Plaintiff sues Robert Wilkie, Secretary of the Department of Veterans Affairs ("Defendant") for discrimination based on race, color, age, disability, and reprisal. *Id.* at 8. On April 3, 2017, Plaintiff applied for a "Police Officer GS-6" job under Vacancy Announcement Number NY-17-FNC-1930856-BU (the "First Vacancy Announcement"). *Id.* at ¶1. The First Vacancy Announcement was posted on the USA Jobs website on March 23, 2017, for those who chose to apply under "Special Employment Considerations," and the posting was scheduled to close on April 13, 2017. *Id.* at ¶2. As a disabled veteran with a service-connected disability at 30% or more, Plaintiff applied for "Special Employment Consideration" for the position listed under the First Vacancy Announcement. *Id.* at ¶3. Plaintiff contacted the service placement coordinator regarding the First Vacancy Announcement on April 3, 2017, because he was barred from contacting her by telephone. *Id.* at ¶4. Three days later, Senior Human Resource Specialist Michael Biondo ("Biondo") notified Plaintiff that Bay Pines received his application and Plaintiff would be considered for the position under the First Vacancy Announcement. *Id.* at ¶5. Twelve days later, Plaintiff was notified that he was ineligible for consideration for the position because he did not meet the requirements for applicants. *Id.* at ¶6.

On April 3, 2017, another "Police Officer GS-6" job was posted on the USA Jobs website as opened and closed under Vacancy Announcement Number NY-17-FNC-194457-BU-NC (the "Second Vacancy Announcement"). *Id.* at ¶11. This position was listed as a direct hire authority position, which was open to all United States citizens. *Id.* at ¶12. On April 17, 2017, four days after the First Vacancy Announcement closed, Bay Pines created an application date for Plaintiff for the position under the Second Vacancy Announcement. *Id.* at ¶13. On April 18, 2017, Plaintiff

http://www.flmd.uscourts.gov/litigants-without-lawyers under the link "Go to the Guide for Proceeding Without A Lawyer."

received notice that he qualified for the position under the Second Vacancy Announcement and that his application would be forwarded to the employing agency for consideration. *Id.* at ¶14. Plaintiff e-mailed the USA Jobs helpdesk to request a printed copy of the Second Vacancy Announcement, which was provided. *Id.* at ¶15.

Plaintiff also made a Freedom of Information Act ("FOIA") request for a copy of the "Certificate of Eligibles" regarding the Second Vacancy Announcement; upon receipt, Plaintiff noted that the Second Vacancy Announcement was for a direct hire position and had an open dual certification. *Id.* at ¶16. Biondo admitted that he created the Second Vacancy Announcement. *Id.* at ¶17. Plaintiff contends that only certain individuals may create direct hire positions. *Id.* at ¶18. Plaintiff made another FOIA request on October 17, 2017, this time requesting a copy of Biondo's direct hire request as it pertains to the Second Vacancy Announcement, but he received a "No Records Response." *Id.* at ¶19. He alleges that Biondo created the "fake" position under the Second Vacancy Announcement to "trick" Plaintiff into believing that he was being considered for the position under the First Vacancy Announcement, for which he was considered ineligible. *Id.* at ¶20. Plaintiff nonetheless asserts that he was eligible under "Special Employment Considerations" and argues that his ineligibility stems from his "No Engagement" status with Bay Pines, the legality of which he disputes. *Id.* at ¶¶20–21.

On May 9, 2017, Plaintiff contacted an EEO counselor by telephone to discuss his ineligibility for the position under the First Vacancy Announcement. *Id.* at ¶7. According to Plaintiff, the EEO counselor misrepresented the date on which Plaintiff received the notification of non-selection for the position under the Second Vacancy Announcement as April 18, 2017, whereas Plaintiff actually received the notification on May 25, 2017. *Id.* at ¶8.

On May 25, 2017, Plaintiff was notified that another candidate was selected to fill the position under the Second Vacancy Announcement. *Id.* at ¶23. Plaintiff alleges that the selected candidate, Micah Shoaf ("Shoaf"), was not on the direct hire authority certificate and he was thus ineligible for this direct hire authority position. *Id.* at ¶24. Plaintiff contends that he was the only certified individual on this list. *Id.* Plaintiff also contends that Shoaf was selected under the "rule of threes" procedure for the position under the First Vacancy Announcement over two other candidates for that position, Mr. William Doherty and Mr. Edward Gonzalez, rather than the position under the Second Vacancy Announcement. *Id.* at ¶26. On May 30, 2017, Plaintiff "made an informal counseling" regarding his non-selection for the position under the Second Vacancy Announcement. *Id.* at ¶27.

On May 30, 2017, Plaintiff moved for leave to file a formal EEOC complaint for each position, which the Court granted on June 1, 2017, in *Hooker v. Department of Veterans Affairs*, No. 8:17-mc-00062-MSS-AAS (M.D. Fla.) (the "Scriven Order"). *Id.* at ¶¶10, 28; Doc. 48-5 at 11–12. Plaintiff filed a complaint for the position under the First Vacancy on June 6, 2017. *Id.* at ¶10. Plaintiff filed a complaint for the position under the Second Vacancy on June 10, 2017. *Id.* at ¶28. On October 13, 2017, AFGE Local 548 President Tatishka Thomas ("Thomas") sent an e-mail to Plaintiff, stating that the Second Vacancy Announcement was created for him and informing him that, although the position thereunder was offered to Shoaf, such offer had been retracted and the position had not yet been filled. *Id.* at ¶29.

The Second Amended Complaint identifies two claims, labeled "Claim A" and "Claim B." *Id.* at 8. Claim A asks the Court to determine whether Defendant discriminated against Plaintiff based on his race, color, age, disability, and reprisal (for prior EEO activity) when he was not selected for the position under the First Vacancy Announcement. *Id.* Claim B asks the Court to

determine whether Defendant discriminated against Plaintiff when it did not select him for the position under the Second Vacancy Announcement based on reprisal for prior EEO activity and age. *Id.* Plaintiff seeks $300,000 in compensatory damages, placement into one of the two police officer positions, and $600,000 in lieu of lifting the lifetime ban against Plaintiff. *Id.* at 18–19.

### B. Procedural Background

The Court has previously detailed the procedural history of this action, but will briefly do so again. On August 30, 2018, Plaintiff filed an amended complaint (the "Amended Complaint"), which identified three claims, labeled "Claim A," "Claim B," and "Claim C." Doc. 13 at 7, 10, 13. First, Claim A requested the Court to determine whether Defendant discriminated against Plaintiff based on "race (African American), color (Black), age, disability, and reprisal" in issuing a "Restricted Access Letter" that placed Plaintiff on "No Engagement" status. *Id.* at 7. Second, Claim B requested the Court to determine whether Defendant discriminated against Plaintiff based on reprisal for prior EEO activity and age when it did not select him for the position under the First Vacancy Announcement. *Id.* at 10. Third, Claim C requested the Court to determine whether Defendant discriminated against Plaintiff based on reprisal for prior EEO activity and age when it did not select him for the position under the Second Vacancy Announcement. *Id.*

Defendant moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 17 at 6–10. The Court agreed and granted Defendant's motion to dismiss, finding first that Claim A exceeded the scope of the Scriven Order, was an attempt to relitigate issues, and failed to state a claim. Doc. 43 at 9–11. The Court also found that Claims B and C failed to state a claim upon which relief could be granted. *Id.* at 9–12. The Court granted Plaintiff leave to file a new amended complaint and instructed Plaintiff to confine his claims to the positions under the First Vacancy Announcement and the Second Vacancy Announcement. *Id.* at 14.

Plaintiff subsequently filed the Second Amended Complaint, and Defendant thereafter filed the Motion.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* In addition to including "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); *Ashcroft*, 556 U.S. at 677–78, each claim must be "limited as far as practicable to a single set of circumstances," and each claim founded on a separate transaction or occurrence must be stated in a separate count or defense if doing so would promote clarity, Fed. R. Civ. P. 10(b).

In ruling on motions to dismiss, courts must: "(1) disregard conclusory allegations, bald legal assertions, and formulaic recitation of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiff." *Doe v. Rollins College*, 352 F. Supp. 3d 1205, 1208 (M.D. Fla. 2019) (Dalton, J.) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Plausible claims must be founded on sufficient

"factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 679.

In assessing the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012). While pleadings from *pro se* litigants are held to a less stringent standard than pleadings drafted by attorneys, *Tannenbaum v. United States*¸ 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), they still must meet minimal pleading standards, *Pugh v. Farmers Home Admin.*, 846 F. Supp. 60, 61 (M.D. Fla. 1994) (Kovachevich, J.).

## III.     ANALYSIS

### A.  Motion to Dismiss

Under Claim A in the Second Amended Complaint, Plaintiff asks the Court to determine whether Defendant discriminated against Plaintiff on the basis of race (African-American), color (Black), age, disability, and reprisal (for prior EEO activity described in *Hooker v. Shuklin*, No. 8:17-mc-104-EAK-TGW (M.D. Fla.)) when he was not selected for the position under the First Vacancy Announcement. Doc. 48 at 8. Claim B asks the Court to determine whether Defendant discriminated against Plaintiff when it did not select him for the position under the Second Vacancy Announcement based on reprisal for prior EEO activity and age. *Id.* Plaintiff seeks $300,000 in compensatory damages, placement into one of the two police officer positions, and $600,000 in lieu of lifting the lifetime ban against Plaintiff. *Id.* at 18–19. The Second Amended Complaint contains scattered references to Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 2000e *et seq.*, such as his allegation that he is entitled to relief under Title VII, as amended by the Civil Rights Act of 1991 and the Lily Ledbetter Fair Pay Act of 2009.[3] *Id.* at 4.

Defendant moves to dismiss, arguing: (1) Claim A fails to state a cause of action of discrimination on the selected bases and fails to state a claim of retaliation based on prior EEO activity; and (2) Claim B fails to allege plausible claims of retaliation or age discrimination.[4] Doc. 52 at 3–7. Upon consideration, and for the reasons discussed below, the claims are due to be dismissed because they fail to state a claim upon which relief may be granted.

### i. Discrimination Based on Race and Color

Under Claim A, Plaintiff requests the Court to determine whether Defendant discriminated against him on the basis of his race and color in not selecting him for the position under the First Vacancy Announcement. Doc. 48 at 8. To state a claim for failure-to-hire based on racial discrimination under Title VII, a plaintiff must allege that he: (1) is a member of a protected class; (2) applied, and was qualified, for a position for which the employer was accepting applications; (3) despite his qualifications, he was not hired; and (4) the position remained open or was filled by another person outside of his protected class. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

At the outset, under his "Concise Statement of the Precise Relief Requested," Plaintiff sets forth these elements and accompanying allegations to argue that he "meets th[e] criteria." Doc. 48

---

[3] Plaintiff also mentions Title VII in the "Jurisdiction" section of the Second Amended Complaint. Doc. 48 at 5.

[4] Plaintiff alleges that he "has complied with all jurisdictional prerequisites to [the] action under Title VII of the Civil Rights Act of 1964 and 1991 as amended," including "having exhausted all remedies" through the Veterans Affairs Office of Resolution Management. Doc. 48 at 5. Defendant does not dispute Plaintiff's alleged satisfaction of such prerequisites, but instead attacks the plausibility of Plaintiff's claims. Doc. 52 at 3–7.

at 18. Although these elements and allegations are listed under a section describing Plaintiff's requested relief and are therefore removed from the allegations offered to support Plaintiff's individual claims, the Court construes these allegations as being offered in support of Claim A, given that Plaintiff alleges that Defendant discriminated against him on the basis of race or color in Claim A only. In an effort to support his claim for failure-to-hire on the basis of racial discrimination, Plaintiff indicates in these allegations that he is Black and African American, but asserts that he was qualified for the position under the *Second* Vacancy Announcement.[5] *Id.* Indeed, he asserts that he constituted "the only person on the Direct Hire Authority Police Officer Position Certificate of Eligibles" for the position under the Second Vacancy Announcement. *Id.* But Claim A pertains to the position under the First Vacancy Announcement, while Claim B pertains to the position under the Second Vacancy Announcement. Claim B, as framed by Plaintiff, does not include a failure-to-hire claim on the basis of racial discrimination under Title VII against Defendant. Thus, this effort to allege his qualification for the position under the First Vacancy Announcement is unavailing.

A review of the remaining allegations demonstrates that Plaintiff has failed to state a claim that he was qualified for the position under the First Vacancy Announcement. Plaintiff alleges that he applied for the position on the basis of "Special Employment Consideration" on April 3, 2017. Doc. 48 ¶¶1, 3. Three days later, he received an e-mail regarding his application, stating that he

---

[5] Perhaps as a result of noticing his error, Plaintiff sets forth these elements again in his response to the Motion and argues that he qualified for the position under the First Vacancy Announcement on April 6, 2017, when Biondo advised him that his application had been received and he would be considered. Doc. 53 at 2. However, Plaintiff may not amend the Second Amended Complaint through his response. *Grandrimo v. Parkcrest Harbour Island Condo. Ass'n, Inc.*, No. 8:10-cv-964-T-27MAP, 2011 WL 550579, at *5 (M.D. Fla. Feb. 9, 2011) (Whittemore, J.). Further, while *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, "a district judge is not required to rewrite a deficient pleading." *McFarlin v. Douglas Cnty.*, 587 F. App'x 593, 595 (11th Cir. 2014).

would be considered. *Id.* at ¶5. Significantly, he subsequently received a notification that he was ineligible for the position because he did not meet the requirements for who could apply. *Id.* at ¶6. Thus, Plaintiff was declared ineligible for the position. Plaintiff asserts that "it is an undisputed fact" that this declaration of ineligibility stems from his ban from the Bay Pines VA Healthcare System and "No Engagement" status. *Id.* at ¶21. To undercut the veracity of his purported ineligibility for the position, Plaintiff contends that the ban "was in fact illegal" based on "court documentation" he received from this Court. *Id.* at ¶22. The Court is not bound to accept this legal conclusion and, in any event, the documents offered in support of the ban's purported illegality, which are attached to the Second Amended Complaint, do not permit the Court to draw the reasonable inference that Defendant is liable for the alleged misconduct.

Plaintiff offers the following documents: (1) a "Records Check Request" by Plaintiff to the Clerk of this Court to determine if Plaintiff "was ever arrested, charged, fined or imprisoned by the Bay Pines VA Police Department, under the authority of 38 [C.F.R] 1.218"; and (2) a records search certification from the Clerk, dated August 10, 2017, which simply lists fourteen closed civil actions in which Plaintiff was a party and no search results for criminal cases involving Plaintiff. Doc. 48-8 at 5–7. These documents, together with the accompanying allegations, simply do not plausibly show that Plaintiff was eligible for the position. Further, Plaintiff's argument in his response that he "provided documentary evidence" from Defendant demonstrating that he met the application requirements is also insufficient. Doc. 53 at 6. Even when viewing the factual allegations in the light most favorable to Plaintiff and accepting as true his allegation that he applied for the position on a "Special Employment Consideration" basis as a veteran with a service-connected disability, this assertion fails to address Defendant's subsequent notification— sent to Plaintiff after he had allegedly applied for "Special Employment Consideration" —that he

was ineligible for the position because he did not meet the requirements for applicants.[6] Simply put, the Second Amended Complaint does not allege plausible facts that Plaintiff was qualified for the position under the First Vacancy Announcement.

Additionally, the Second Amended Complaint does not allege plausible facts that the position under the First Vacancy Announcement was filled with a person outside the protected class or filled at all. Whether Shoaf was initially selected for the position under the First Vacancy Announcement or the position under the Second Vacancy Announcement is entirely unclear. Plaintiff alleges that he received notification indicating that another candidate was selected for the position under the *Second* Vacancy Announcement. Doc. 48 ¶23. But Plaintiff lodges a failure-to-hire claim on the basis of racial discrimination only as to the position under the First Vacancy Announcement. Plaintiff initially contends that Shoaf, who is Caucasian, was "selected" for the position under the Second Vacancy Announcement, even though he could not have been selected off of the direct hire authority certificate for such position because Plaintiff was the only person on the certificate. *Id.* at ¶24. Plaintiff next alleges that Shoaf was "selected off a competitive certificate under the rule of three procedures as it pertains to" the position under the *First* Vacancy Announcement, for which he competed with two other individuals. *Id.* at ¶26. Plaintiff then alleges

---

[6] Further, the e-mail from Thomas to Plaintiff, which is attached to the Second Amended Complaint, states that the "referenced announcement" was a direct-hire announcement because Plaintiff reached out "regarding the [p]olice announcement which was announced from March 23 – April 13 for Bay Pines Staff only." Doc. 48-10 at 11. Given Plaintiff's assertion that the First Vacancy Announcement closed on April 13, 2017, this e-mail suggests that the position under the First Vacancy Announcement was for Bay Pines staff only. As Plaintiff was not a member of Bay Pines staff, he would be ineligible for the position on this basis. Plaintiff also alleges that the EEO counselor's note references the position under the First Vacancy Announcement, which, as alleged, was open to "[c]urrent, [p]ermanent Bay Pines employees." Doc. 48 ¶9. An exhibit identified as the EEO counselor's report also describes the position as being open to current, permanent Bay Pines employees. Doc. 48-4 at 6. These documents further undercut Plaintiff's purported eligibility.

that Thomas notified him that the Second Vacancy Announcement was created just for him and that the position under the *First* Vacancy Announcement was offered to Shoaf, but the offer was subsequently retracted, and, as of the date of Thomas' e-mail, the position had not yet been filled. *Id.* at ¶29.

These confusing allegations do not sufficiently allege whether the position under the First Vacancy Announcement remained open or was filled by a person outside of the protected class. Plaintiff's allegations under his "Concise Statement of the Precise Relief Requested" section, as discussed above, do not fare any better, as Plaintiff doubles down on this approach by again referencing Shoaf's "selection" for the position.[7] *Id.* at 48. Even if the Court somehow construes the Second Amended Complaint's allegations as asserting that Shoaf, as a Caucasian, was initially selected for the position under the First Vacancy Announcement and the position remained open following the retraction of the offer, Plaintiff fails to allege plausible facts that he was qualified for the position. As such, his failure-to-hire claim on the basis of racial discrimination does not state a proper claim under Title VII.

## ii. Discrimination Based on Age

### 1. Claim A

---

[7] Plaintiff's response to the Motion only reinforces the muddled nature of these allegations. Despite bringing a racial discrimination failure-to-hire claim for only the position under the First Vacancy Announcement, Plaintiff sets forth the failure-to-hire elements for the position under the First Vacancy Announcement and the Second Vacancy Announcement in an apparent attempt to argue that he has "clearly" stated a racial discrimination failure-to-hire claim for both positions. Doc. 53 at 2–6. Under the fourth failure-to-hire element for each claim, Plaintiff references Shoaf's selection off a competitive certification for the position under the First Vacancy Announcement over Mr. William Doherty and Mr. Edward Gonzalez. *Id.* at 3. As consistently emphasized herein, Plaintiff, as master of his Second Amended Complaint, elected to bring a racial discrimination failure-to-hire claim for only the position under the First Vacancy Announcement.

Claim A also asks the Court to determine whether Defendant discriminated against Plaintiff on the basis of age when he was not selected for the position under the First Vacancy Announcement. The Court will again interpret this request as a claim for age discrimination under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq.*[8]

"All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free of any discrimination based on age."[9] 28 U.S.C. §633a. As set forth in the Court's prior order, a plaintiff seeking to state a claim for age discrimination in the failure-to-hire context must allege that: (1) he was a member of a protected class—in this case, that he was over 40 years-old; (2) he applied for and was qualified for an available position; (3) he was rejected; and (4) the defendant filled the position with someone outside the protected class. *Childress v. Caterpillar Logistics Servs., Inc.*, 369 F. App'x 95, 96 (11th Cir. 2010) (per curiam) (citing *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274–75 (11th Cir. 2002)).

While a plaintiff asserting discrimination under the ADEA is not required to allege specific facts stating a *prima facie* case, the complaint must nonetheless contain sufficient factual matter to suggest intentional discrimination. *Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 917 (11th Cir. 2015) (per curiam). Indeed, "[w]here a complaint pleads facts that are merely consistent

---

[8] Claim B of the Amended Complaint similarly requested the Court to determine whether Defendant discriminated against Plaintiff on the basis of age when it did not select him for the position under the First Vacancy Announcement, Doc. 13 at 10, which the Court construed as Plaintiff's attempt to state a claim for relief for age discrimination under the ADEA, Doc. 43 at 10–11.

[9] Congress has defined "executive agency" as "an Executive department, a Government corporation, and an independent establishment." 5 U.S.C. § 105.

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

Here, Plaintiff again fails to plead a proper claim for age discrimination under the ADEA. Notably absent from the face of the Second Amended Complaint are allegations regarding Plaintiff's age.[10] Furthermore, as discussed above, Plaintiff has not sufficiently alleged that he was qualified for the position under the First Vacancy Announcement. Third, Plaintiff does not allege plausible facts that the position under the First Vacancy Announcement was filled with a person outside the protected class. Whether Shoaf was initially selected for the position under the First Vacancy Announcement or the Second Vacancy Announcement is unclear. The e-mail from Thomas suggests that that the position may not have been filled. Nonetheless, to the extent that Shoaf or another individual was selected to fill the position, Plaintiff does not allege the age of Shoaf or such individual. While the Court is mindful that Plaintiff is not required to allege specific facts stating a *prima facie* case of age discrimination under the ADEA at this stage of the litigation, an encompassing review of Plaintiff's allegations demonstrates that the Second Amended Complaint fails to allege a plausible claim for age discrimination under the ADEA. The Court identified Plaintiff's failure to state his age, his qualification for position, and the age of the person who received the position in its previous order on Defendant's first motion to dismiss. Plaintiff has not amended his pleading errors. This age discrimination claim is due to be dismissed.

---

[10] Both a "Declaration for Federal Employment" form and a "Certificate of Release or Discharge from Activity" form attached to the Second Amended Complaint indicate that Plaintiff was born in September of 1970, making him forty-nine years old. Doc. 48-1 at 3, 11. Nonetheless, Plaintiff does not affirmatively plead his age in the Second Amended Complaint. The Court previously noted this shortcoming in its order on the prior motion to dismiss. Doc. 43 at 11.

## 2. Claim B

Similarly, Claim B asks the Court to determine whether Defendant discriminated against Plaintiff based on age when he was not selected for the position under the Second Vacancy Announcement. This age discrimination claim is also due to be dismissed.

First, as discussed above, the Second Amended Complaint does not contain any allegations regarding Plaintiff's age. Next, in an effort to state his purported application and qualification for the position under the Second Vacancy Announcement, Plaintiff alleges that he received an April 18, 2017 e-mail stating that his application had been reviewed and that he qualified for the position. Doc. 48 ¶14. Plaintiff attaches this e-mail to the Second Amended Complaint, which indeed states that Bay Pines had reviewed his application and he qualified for the position. Doc. 48-5 at 13. Similarly, although he does not explicitly allege that he was rejected for the position, Plaintiff references his alleged non-selection. *Id.* at ¶27. Even if the Court liberally construes the Second Amended Complaint as satisfying the first three elements of an age discrimination claim under the ADEA, Plaintiff fails to allege that Defendant filled the position with someone outside the protected class. As discussed above, Plaintiff alleges that he received notification that another candidate was selected to fill the position under the Second Vacancy Announcement on May 25, 2017. *Id.* at ¶23. Plaintiff alleges that Shoaf was selected for this position, but he could not be selected off of the direct hire authority certificate under the Second Vacancy Announcement. *Id.* at ¶¶24–25. The Court has already detailed the lack of clarity regarding whether Shoaf was selected for the position under the First Vacancy Announcement or the Second Vacancy Announcement. Like the analysis above, to the extent that Shoaf or another individual was selected to fill the position under the Second Vacancy Announcement, Plaintiff does not allege the age of Shoaf or such individual. Again, while Plaintiff is not mandated to plead specific facts stating a *prima facie*

case of age discrimination under the ADEA at the motion to dismiss stage, his claim must be plausible. The claim here simply falls shorts of that standard. As such, this age discrimination claim is due to be dismissed.

### iii. Discrimination Based on Disability

Claim A also asks the Court to determine whether Defendant discriminated against Plaintiff on the basis of his disability when he was not selected for the position under the First Vacancy Announcement. Doc. 48 at 8. Whether Plaintiff seeks to bring this purported claim for disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, or other grounds is unclear because Claim A merely lists "disability" among purported bases of discrimination and the Second Amended Complaint lacks factual allegations indicating the cause of action.[11] Of course, determining the cause of action is imperative for determining the claim's plausibility.

To analyze discrimination claims based on circumstantial evidence, courts "apply the same standards under the Rehabilitation Act, the ADA, and Title VII and use[] the same framework to analyze these claims as . . . a claim under Title VII." *Tarmas*, 433 F. App'x at 761 n.7; *see also Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007) ("Under the controlling law in this Circuit, '[t]he burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.'"); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) ("The standard for determining liability under the Rehabilitation Act is the same as that under the [ADA] . . . thus, cases involving the ADA are precedent for those involving the

---

[11] "The Rehabilitation Act prohibits federal agencies from discriminating in employment against individuals with disabilities." *Tarmas v. Sec'y of the Navy*, 433 F. App'x 754, 759 (11th Cir. 2011) (per curiam).

Rehabilitation Act."). As such, to state a *prima facie* case of discrimination under either the Rehabilitation Act or the ADA, a plaintiff must show that he: (1) has a disability; (2) is otherwise qualified for the position; and (3) was subjected to unlawful discrimination as the result of his disability. *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999) (setting forth the standard in the context of a Rehabilitation Act claim); *Holly*, 492 F.3d at 1255–56 (setting forth the standard in the context of an ADA claim).

For the first element, the ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one of more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include, without limitation, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2). The Rehabilitation Act adopts this "disability" definition for disability discrimination purposes. 29 U.S.C. § 705(9)(B); *Branscomb v. Sec'y of Navy*, 461 F. App'x 901, 903–04 (11th Cir. 2012) (per curiam). For the second element, a plaintiff is a "qualified individual" if he, "with or without any reasonable accommodation, can perform the essential functions of the job." *Holly*, 492 F.3d at 1256 (internal quotation marks omitted) (evaluating a disability discrimination claim under the ADA); *Curry v. Sec'y, Dep't of Veterans Affairs*, 518 F. App'x 957, 964 (11th Cir. 2013) (evaluating a disability discrimination claim under the Rehabilitation Act and relying on the ADA in interpreting this element).

Here, Plaintiff merely alleges that he is a disabled veteran "with a compensable service connected disability of 30% or more as stated in" the First Vacancy Announcement. Doc. 48 ¶3. The Second Amended Complaint lacks any description or further identification of such purported disability, including whether the disability is a physical or mental impairment substantially limiting one or more major life activities of Plaintiff. Further, as Defendant points out, Plaintiff fails to allege plausible facts that he is a "qualified individual." Indeed, there is no indication that Plaintiff can perform the essential functions of the position under the First Vacancy Announcement. The Second Amended Complaint lacks any allegations plausibly stating that Plaintiff was subject to unlawful discrimination as a result of his disability. Plaintiff's disability discrimination claim under Claim A is subject to dismissal.

### iv. Retaliation Based on Prior EEO Activity

#### 1. Claim A

Claim A further requests the Court to determine whether Defendant discriminated against Plaintiff on the basis of "reprisal" for prior EEO activity when he was not selected for the position under the First Vacancy Announcement. Doc. 48 at 8. The Court will again construe this request as a claim for retaliation under Title VII.

Title VII prohibits retaliation against applicants for employment for opposing "any practice made an unlawful employment practice by this subchapter" or because such applicant "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To state a claim for retaliation under Title VII, a plaintiff must allege that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Trask v. Sec'y, Dept' of Veterans Affairs*, 822 F.3d 1179, 1193–94 (11th Cir. 2016).

Here, even when liberally interpreting Plaintiff's allegations, this purported Title VII retaliation claim is not founded upon sufficient factual content to permit the Court to infer reasonably that Defendant is liable for the alleged misconduct. First, Plaintiff addresses only the first element of this retaliation claim. In describing his claim for "reprisal" in Claim A, Plaintiff vaguely references *Hooker v. Shuklin*, No. 8:17-mc-00104-EAK-TGW (M.D. Fla.) as his "prior EEO activity." Doc. 48 at 8. Further explanation of the alleged EEO activity in that action does not accompany this cursory reference, with the exception of an introductory paragraph, removed from Claim A, which references that action and an "Employment Discrimination Complaint that dates back to July of 2014." *Id.* at 2. Despite attaching thirty exhibits to the Second Amended Complaint, Plaintiff declined to provide supporting documentation for this reference to prior EEO activity. In *Hooker v. Shuklin*, the Court granted Plaintiff leave to file a complaint for certain EEO activity related to Defendant's rejection of Plaintiff's application for two security assistant positions. No. 8:17-mc-00104-EAK-TGW (M.D. Fla.), Doc. 5 at 1.[12] The order in that case states that Plaintiff had filed a complaint of employment discrimination on July 14, 2014, and, after an EEOC administrative judge dismissed that complaint on October 26, 2016, the EEOC denied Plaintiff's request to reconsider its decision to uphold Defendant's final order in July of 2017. *Id.* While it appears that Plaintiff is attempting to argue that his filing of an employment discrimination complaint regarding these two purported security assistant positions in July of 2014 constituted

---

[12] The Court takes judicial notice of the order granting leave to determine its contents, rather than the truth of the statements therein. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (stating the court may take judicial notice of public filings "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents"); *Univ. Express, Inc. v. United States S.E.C.*, 177 F. App'x 52, 53–54 (11th Cir. 2006) (per curiam) (explaining that the district court could take judicial notice of public documents in another action, such as a complaint).

prior EEO activity that served as Defendant's alleged basis for retaliating against him, the details of such alleged prior EEO activity are unclear in the absence of more substantive allegations. To the extent that Plaintiff seeks to rely on other EEO activity to serve as the basis for his alleged prior EEO activity, notwithstanding his reference to *Hooker v. Shuklin*, the Second Amended Complaint lacks such supporting allegations.

The remaining EEO activity discussed in the Second Amended Complaint references activity that occurred after the date when Plaintiff applied for the position under the First Vacancy Announcement. Plaintiff alleges that he contacted an EEO counselor "for an informal counseling" regarding the position under the First Vacancy on May 9, 2017. Doc. 48 ¶7. However, Plaintiff received notice of his non-selection for the position several weeks earlier, on April 18, 2017.[13] *Id.* at ¶6. Thus, this allegation is insufficient to state any engagement in statutorily protected activity for purposes of Plaintiff's alleged retaliation claim for the position under the First Vacancy Announcement.

In any event, turning to the next element—materially adverse action—the United States Supreme Court has emphasized Section 2000e–3 does not confine the actions and harms forbidden thereunder to employment-related actions or those that occur at the workplace. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Consequently, courts have broadly construed such adverse actions as including those actions "not specifically related to the normal confines of the workplace." *Toomer v. Ricketts*, No. CV419-039, 2019 WL 4166783, at *3 (S.D. Ga. Aug. 30, 2019) (collecting cases). Here, while Plaintiff's non-selection for the position under the First

---

[13] According to Plaintiff, he received notice of his non-selection for the position under the *Second* Vacancy Announcement on May 25, 2017, and the EEO counselor "fraudulently" stated that he received the notice for this position on April 18, 2017. Doc. 48 ¶8. Of course, this allegation pertains to the position under Second Vacancy Announcement, not the First Vacancy Announcement.

Vacancy Announcement presumably serves as the materially adverse action, Plaintiff does not identify a specific materially adverse action in the Second Amended Complaint, leaving both Defendant and the Court to speculate. Nonetheless, even if the Court determines that Plaintiff has plausibly alleged that he previously engaged in statutorily protected activity and stated his non-selection for the position under the First Vacancy Announcement as a materially adverse action, he has failed to allege a causal link between the two. The Court cannot discern any attempt to link engagement in protected activity to such non-selection in the Second Amended Complaint. Thus, the effect of Plaintiff's purported engagement in protected activity on Defendant's non-selection of Plaintiff for the position, if any, is unclear.

Overall, a liberal construction of the Second Amended Complaint illustrates that Plaintiff's allegations simply do not provide sufficient factual support for this retaliation claim. Plaintiff has not "nudged" this claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (internal quotation marks omitted). As such, the claim is due to be dismissed.

### 2.  Claim B

Claim B also asks the Court to determine whether Defendant discriminated against Plaintiff on the basis of "reprisal" for prior EEO activity when he was not selected for the position under the Second Vacancy Announcement. Doc. 48 at 8. Like Plaintiff's Title VII retaliation claim under Claim A, this claim is also due to be dismissed.

At the outset, Plaintiff's statutorily protected activity as it relates to the position under the Second Vacancy Announcement is unclear. Unlike Claim A, which included a cursory reference to another case before the Court, Claim B describes the alleged protected activity even more broadly as merely "prior EEO activity." *Id.* As a result, both Defendant and the Court are again

left to speculate as to the alleged protected activity.[14] To the extent that Plaintiff seeks to rely on the purported EEO activity alleged in *Hooker v. Shuklin*, No. 8:17-mc-00104-EAK-TGW (M.D. Fla), as his statutorily protected activity, this reliance suffers from the same flaws as described in the analysis for Plaintiff's retaliation claim under Claim A. Further, Plaintiff again fails to identify a specific materially adverse action. Finally, like Claim A, Plaintiff does not allege any causal link between alleged protected activity and his non-selection for the position under the Second Vacancy Announcement, and the Court can discern none.

Thus, this claim shares the same fate as its companion retaliation claim. The Second Amended Complaint lacks sufficient factual support for the claim. In light of the absence of sufficient plausibility, the claim is due to be dismissed.

### B. Remaining Motions

Three other motions are pending before the Court: Defendant's Motion for Reconsideration, Doc. 57, Plaintiff's Motion for Reinstatement of CM/ECF Privileges, Doc. 59, and Plaintiff's Motion Requesting Pleading to Second Amended Complaint in Lieu of Discovery, Doc. 60. Defendant's Motion for Reconsideration requests reconsideration of the Court's order lifting the stay of discovery because, according to Defendant, Plaintiff's rhetoric and vexatious behavior is likely to translate to discovery abuses and such abuses would lead to an influx of motions in a case that may be subject to dismissal. Doc. 57 at 3. In the Motion for Reinstatement

---

[14] In his response to the Motion, Plaintiff references the purported EEO activity in *Hooker v. Shuklin*, No. 8:17-mc-00104-EAK-TGW (M.D. Fla.), before concluding that he "has not failed to properly allege that he engaged in protected activity, or establish that there was a causal link between the failure to hire and the alleged protected activity, Claim A and B of the Second Amended Complaint cannot be dismissed." Doc. 53 at 7. However, the Amended Complaint references the alleged EEO activity in *Hooker v. Shuklin* only in reference to the position under the First Vacancy Announcement. Additionally, as explained above, any attempt to rely on this activity is deficient for the same reason that it is deficient under the analysis for the position under the First Vacancy Announcement.

22

of CM/ECF Privileges, Plaintiff requests reinstatement of his CM/ECF filing privileges following the revocation of Plaintiff's privileges in another action. Doc. 59 at 1–2. Finally, in the Motion Requesting Pleading to Second Amended Complaint in Lieu of Discovery, Plaintiff requests a responsive pleading to the Second Amended Complaint "[d]ue to the undisputed fact" that "it appears on it[s] face" that the Court's lifting of the stay of discovery effectuated a denial of the Motion. Doc. 60 at 4. As set forth above, Plaintiff's claims are due to be dismissed in their entirety, and the case will be closed. Based on the nature of the requested relief, each of these motions are due to be denied as moot.

## IV.    CONCLUSION

The Second Amended Complaint represents Plaintiff's second attempt to plead Claim A and Claim B. The Court previously afforded Plaintiff an opportunity to amend his complaint to state viable claims. "While a *pro se* litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile." *Cornelius v. Bank of Am., N.A.*, 585 F. App'x 996, 1000 (11th Cir. 2014) (per curiam). A *pro se* complaint is properly dismissed where there is "no indication that, given a third bite at the apple, [the plaintiff] would correct the numerous deficiencies in his complaint." *Id.* The Court is not convinced that permitting Plaintiff a third attempt to amend these claims will cure the deficiencies. As such, Claim A and Claim B, as pleaded in Second Amended Complaint, will be dismissed with prejudice.

Accordingly, it is **ORDERED** as follows:

1.  Defendant's Motion to Dismiss Second Amended Complaint, Doc. 52, is **GRANTED**. Claim A and Claim B, as pleaded in the Second Amended Complaint, Doc. 48, are **DISMISSED WITH PREJUDICE**.

2. Defendant's Motion for Reconsideration, Doc. 57, is **DENIED AS MOOT**.

3. Plaintiff's Motion for Reinstatement of CM/ECF Privileges, Doc. 59, is **DENIED AS MOOT**.

4. Plaintiff's Motion Requesting Pleading to Second Amended Complaint in Lieu of Discovery, Doc. 60, is **DENIED AS MOOT**.

5. The Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Tampa, Florida on January 21, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any